I'm not sure I pronounced that right Mr. Bailey. That is correct your honor. May it please the court, counsel. I'm Rick Bailey, counsel for the appellant, the defendant below, Pasquale Rubbo. In the plea agreement in this case, the government agreed that in exchange for Rubbo's full and truthful cooperation, as the plea agreement defined that, that the government would file a motion for reduction of sentence under 5k and 3553 E. The government further stated that based on the facts known to it at the time of the plea agreement, it expected to file a motion for downward departure of 20% from the high end of the applicable sentencing guideline range. Prior to the sentencing, the government did file a motion for reduction of sentence, but only requested a 15% reduction, not the 20% reduction referenced in the plea agreement. It explained, and this is the key, it explained that it's more limited reduction request was due to Rubbo's failure to comply with terms of his bond by contacting a witness, not because of any incompleteness or lack of truthfulness in his cooperation. This failure to make a 20% reduction recommendation because of reasons unrelated to his cooperation was a breach of the plea agreement by the government, constituted plain error, and his sentence should be reversed in the case remanded for Now this court has said a number of times, first in the Van Dam case and numerous cases since then, that a plea agreement is reviewed like a contract. It is to be construed strictly against the government and it's to be interpreted according to its terms using what would be the reasonable expectation of the defendant. Well, and expectation is a good word to talk about here because that's the word that the government used, that it expected to recommend a departure of 20%. And it seems under the Sabayon-Umana case, that's not a promise to actually recommend a 20% departure. Can you distinguish that case? Which case was that, Your Honor? Sabayon-Umana? Yes, Your Honor. In that case, where the government promised to recommend it, I'm sorry, a couple of years off the statutory mandatory minimum sentence. Right. And in that case, Your Honor, the reason... And the plea agreement used the word anticipates in that case rather than expects, but how is that any different? In that case, Your Honor, the reason that the government gave for reducing the recommendation, I believe the plea agreement had said and anticipated or expected 40% and they came back much lower than that. The government specifically said that the reason for that reduced reduction was because of problems with the defendant's cooperation. He said his cooperation was not truthful, it was incomplete, that he minimized his own involvement in activity that was going to make his use as a witness difficult later on. And in fact, the government said that they frankly debated whether to file any motion for reduction because of how deficient his cooperation was. Don't we have that here? Don't we have the government arguing here that he didn't comply with his promise to cooperate? No, Your Honor. The government has never said, prior to their initial brief here, that there were any deficiencies in his cooperation. In fact, if we look exactly at what they said when they made their recommendation, let me grab that language here, it was in their motion for sentencing reduction. The only justification they gave for their diminished reduction was this, quote, the government believes a slightly reduced departure of 15% from the high end of the guidelines is justified by the usefulness of the assistance rendered with respect to the arrest of fugitives balanced against the defendant's performance while on bond. Right. And while on bond, isn't this when he had the, he had a conversation with a witness, that's in furtherance of the I mean, I understand they didn't use the words cooperate, but why isn't that all related to a failure to cooperate? Well, two things, Your Honor. First, they didn't even allege below that those conversations with the witness were somehow in furtherance of the fraud. They simply recognized that he had had conversations with this witness, even though his bond required him not to. But to see whether that was a violation of his cooperation requirement, we need to look at exactly what kind of cooperation duty did the government impose upon Mr. Rubo in the plea agreement. If we look at the language that was used, the plea agreement required him to cooperate, and this is on page three of the plea agreement, defendant agrees to cooperate fully, honestly, without reservation, and with the government, relating to any matter being investigated by the government, about which the defendant may possess knowledge, information, or materials. And then it goes on and gives four specific types of cooperation that he's required to give, and in at least three of those four, it says that he has to provide information when requested by the government. No allegation below, first, that any of this type of information about his contact with the witness was ever requested by the government, and second, there's no explanation or argument below that this contact with the witness was somehow relevant to any ongoing investigation. The government doesn't even make that argument on appeal here. The government's argument here is simply that, broadly, that any obligation to comply with your bond, and they cite the U.S. versus Overbrook case. That was an unpublished case, and it simply holds nothing to that extent. In the Overbrook case, we had a much broader duty to cooperate clause than what we have here. In Overbrook, the plea agreement provided that the defendant's duty to cooperate was to, quote, all matters within the knowledge of this defendant as they relate to any wrongdoing involving the defendant and others. Much broader than what we have here, and in Overbrook, what the defendant did after the plea and before sentencing, he was arrested twice, he refused to return phone calls, investigators didn't show up to appointments with the investigators as he was required to do so, and in fact, his counsel had cleared him to make a recorded phone call on the government's behalf to a suspect in another matter, and he refused to do that. And the government, in that case, refused to make the downward departure motion because of his failure to cooperate. Here, we don't have the government ever saying that there was any deficiencies in Mr. Rubo's cooperation. They never complained that he was untruthful, they never complained that he was incomplete, that he didn't answer questions when asked, that he didn't show up when he was supposed to show up. They point to what they consistently described below as simply this violation of his bond agreement. Now, they could have worded the plea agreement to include that as an obligation of his duty to cooperate. They didn't. We have a very narrow duty to cooperate provision that the government imposed here, and we have no allegations below that he ever failed to comply fully and completely with that. I don't see the, I guess I don't see the narrow part of the cooperation agreement. I understand that they didn't specifically cite it, but... Well, Your Honor, the language in the cooperation requirement here requires him to cooperate as to any ongoing investigation. Not like we have in Overbrook, any illegal activity that he may have been involved in or anyone else. What about affirmatively and immediately providing to the government any, the word any is important, information and materials that come to the defendant's attention that may be relevant to any government investigation? To any government? Well, I mean, this investigation was, I mean, the conversation he had with the witness was certainly relevant to that investigation. We mean... Your Honor, we can speculate as to that, but the government's never made that argument, and the government has never given us any details about the content of these communications, so that... And it's your position that this, it's too late for the government to make this connection at this appeal level. And they haven't even attempted to make that on appeal here, Your Honor. The statement that they made in the, back in their recommendation, their motion, these are the only two sentences that they have that describe the contact with the witness. It said, this is in page four of their motion, first they referenced that the bond required him not to contact witnesses, and then they say, quote, despite that prohibition, the defendant engaged in multiple instances of contact with a known witness, EM, period. The government, or the defendant, continued to work on a deal to license the scrubby glove through EM's company and engaged in telephone calls, email exchanges, and wire transfers with EM's company, period. Close quote. Never any allegations that this was part of an untoward about this, this contact at all. In fact, in a footnote to that, they referenced that at one point the government was concerned that some of these wire transfers involved money that came from the fraud, and ultimately they determined that these wire transfers came from money that was provided by the defendant's mother. So there's no allegations that the government has made either below or even on appeal here, that this contact with the witness somehow involved any kind of ongoing investigation. They did address the fact that they, in the plea agreement, they reserved the right and their sole discretion to change the amount of the recommendation based on the defendant's compliance with the terms of his cooperation to include being honest and truthful in his dealings with the government. That's right, your honor, and if they had come in and said, we don't believe his cooperation was complete because he didn't say X, Y, and Z, or we don't believe he was truthful, and we in our sole discretion are going to exercise our discretion. They needed to connect the dots is your position. In the plea agreement, they said, we will base his downward departure motion on one thing, his cooperation with ongoing investigations. They've never said that anything that he did somehow violated that obligation. They could have made the plea agreement broader to include this other, they didn't. And they haven't even tried to somehow suck this activity they did within the scope of the duty to cooperate under the plea agreement. Again, if we look at this as Van Damme and the other cases require, construing it strictly against the government, since they drafted this, what was the defendant's expectation? The defendant's reasonable expectation is if I do as they say, fully and completely cooperate, they're going to make a motion of 20%. There's no allegation by anyone that he failed to fully and truthfully cooperate. They didn't make the motion that they were required to make. The court has said, and the Supreme Court has said, that while plea agreements are reviewed like a contract, that they're much more than a contract. Because we have defendants giving up important constitutional rights. And we need to make sure that we're preserving the integrity of the plea bargaining system. According to the most recent reports from the administrative office, 98% of all convictions last year in the federal system were due to a plea agreement. We have to have integrity in the plea bargaining system. And that means that if the government says they're going to do something, we have to hold them strictly to the promise and the performance of that promise. Like my mom used to tell me, if you're not going to do it, don't say you're going to. They could have drafted the plea agreement differently here. They chose to draft it this way and they should be required to abide by the letter of what they promised. I'd like to reserve whatever time I have left. 40, 47 seconds. Thank you, Your Honor. May it please the court, I'm Marissa Miller and I represent the United States. I want to start by briefly addressing counsel's point that we didn't really argue for this below, nor do we argue for it on appeal. I think it's important to remember that, of course, this wasn't an issue below. And that's why it's being reviewed at the very minimum for plain error, because the defendant simply never objected to it. So what we're really looking at here is our motion below. And what hasn't changed here is what we say constituted the failure to cooperate, which is him talking to the witness. So we all agree that that's what bothered the government. We might not have used the words failure to cooperate in an issue. And I do make the argument that this represents a failure to cooperate under the explicit text of the plea agreement on page 11 of my brief. I also briefly want to address counsel's point. That's the language that I cited? Yes, that is the exact provision affirmatively and immediately. I wanted to address counsel's point that we didn't make a motion to revoke the plea agreement based on the fact that we thought the defendant breached. And I'm scraping my 1L contract knowledge here barrel, but I don't think this would represent a breach because this is a conditional promise. So we had sort of a this represents a smaller provision of the overall contract in which we said, if you do this condition precedent, we will do X. And so simply in not doing the condition precedent, we just didn't have an obligation to do that. I mean wasn't it even hedged more than that? Yes. I mean it was based on what we know now, which was presumably before you knew he was running around talking. We expect that we're gonna do, tell the court you should get a 20% reduction. Right. And then of course we reserved our sole discretion. So there's a lot of hedging language there. Yeah. And I mean, do you think on a plain error review especially that that hedge language that you have in there is enough? I do. So opposing counsel has mentioned this idea obviously that ambiguous terms are construed against the drafter and we are the drafter here. I don't think any about thing about these terms is ambiguous, but because we're on plain error, again we're looking for something that's so obvious that it would jump out to the district court even without an objection or argument from the defendant himself. And I think, you know, with this language here, and no case law on point, I think it would be very hard for a judge to recognize that sua sponte. If we construe this liberally in favor of the government about, well we may do such thing, won't that begin to jeopardize the value of plea agreements because they don't appear to be trustworthy or they come up with a different construction and the hundreds and thousands of cases that are shortened by these agreements will be jeopardized. Right. And actually that goes to a point that this court has made before which is that we're actually not that concerned. I mean obviously these provisions give the government a lot of discretion and we might think the government would abuse that power and sort of take advantage of these agreements, but the government has really strong institutional incentives to execute these provisions in good faith to keep their promises to defendants because if we do start sort of abusing that power and for lack of a better term kind of messing the defendants around, then defendants will stop cooperating with us. And so we need them as much as they need us in this situation. It's not to our benefit to kind of trick them. But as far as I'm aware, you never made that argument. Your argument was basically, you didn't make the argument that, well, we didn't really promise it. What you argued was that he therefore, you were freed from the force of that agreement. You're making a new argument now rather than the one about it not being really a promise. Oh, I guess with all due respect, I think I would disagree with that characterization. We never, I think, argued that the defendant breached the plea agreement. We ultimately filed a motion asking for a reduced sentence in which we talked about the defendant's cooperation. And then we said, you know, look, we originally thought we were going to do 20 percent. And based on these facts, we're actually just going to drop it down to 15 percent. And I think that... And these facts, the only fact that drove that was his breach of his bond. I think the fact that drove that was his contact with a witness in the case, which is problematic for several reasons, one of which is that it explicitly violates the terms of his bond. But a defendant who is talking to an important witness in the case against him when the government has explicitly told him not to, I think represents a failure to cooperate in addition to also the facts underlying the situation, which is the defendant and his co-defendants are still trying to promote this cleaning product that they use to swindle a defendant. So to disclose that, which also included this conversation with a witness, I think makes up what the government felt was deceptive behavior and represented a lack of full cooperation. So if we go scrub the documents and the transcripts and everything, are we going to see in there that the government used the word that he breached the plea agreement? I don't think so. I don't have the record committed to memory, so I don't want to fully commit to that. But that is my recollection. And I guess just to sort of return to the larger picture, I think it's important to note that there are really two different branches on which this court could affirm. And that's because we have two separate questions, which is did the government fulfill its obligations regardless of whether the defendant did his or did the defendant fail to do his side of the bargain? And so this first question, the government fulfilled the only promise it made in the plea agreement when it filed this motion for a 15% reduction. And that's because of this language we talked about, where the government said that it only expected to recommend a departure of 20% based on the facts it knew at the time. Under the case law, the government only breaches if it directly contravenes an unqualified, unambiguous promise. And that we never committed to seeking a 20% reduction specifically. Can you address the distinction he made between this case and Sabayon-Umana? Sure. Which I think you're relying on here. Yes, I am. As far as saying that it was an expectation, not a promise necessarily. I mean, I think that Sabayon is entirely in line with this case. I know opposing counsel distinguish it on the grounds that the defendant reduced that based on, or sorry, the government reduced that based on the defendant's failure to cooperate. But that's actually an entirely separate question. So let's say there was no dispute that the defendant cooperated in full. Does the government under this language have the power to still say, we've changed our mind and we're going to go with 15%? It does, because we never committed specifically to 20%. We never get to the basis for the government's decision unless you first get past this question. Yes, that is correct. So I want you to assume for me that he did fully cooperate. And that the decision is totally based on the idea that he wasn't complying with the conditions of release. Do you think that the language in the plea agreement's broad enough to give the government the discretion to recommend a lower reduction, even if he fully cooperates? I think that, I mean, I think that in that scenario, we have to imagine that whatever term of his bond agreement that he violated really has very little connection to the case. So maybe the bond agreement says, don't commit another crime, and he jaywalks. I think that, I think the language is broad enough to allow the government to do that. But I think it's important to remember. Well, let's assume some worse conduct that you found out he was, while he was on release, he was out committing other frauds. Could you then come back and say, you know what, we're not going to give you the full boat. You're misbehaving too much. I think that the government absolutely can do that. And the language here, which is, again, the language that Judge Moritz quoted, is the defendant has to affirmatively and immediately provide to the government any information and materials to the defendant's attention, or that come to the defendant's attention that may be relevant to any governmental investigation. In addition, so I mean, I guess that would just impose a duty on him to disclose his other frauds to the government. But you're getting back to the, you're getting, you're getting back to cooperating. Right. So I guess my- I'm just saying, assume he fully cooperated. My- He's gone and done something bad again. Can you, can you ding him for it? My, I would say no. Fortunately, I don't think we have to resolve that question in this case, because, you know, even a broad definition of cooperation, cooperating in this case probably means doing what the government asks you to do with regard to the case, you know, within reason, and refraining from doing things that could hurt the case that the government tells you explicitly not to do. And I think that talking to a witness falls under that sort of second category. I guess I also wanted to talk about how the plain error standard affects this case. And I think that even if there is sort of this disagreement over whether the defendant cooperated in full, whether his conduct can be considered, I think any tie here has to go to the government. And that's for two reasons. The first, of course, I'm sorry, I just had a thought. I'm going back to a previous point. In addition, I apologize. I'm all over the place. In addition to our sort of concern about how broad the government's powers are, so if he's committing other frauds or if he jaywalks, we also have this court's decision, and I know it wasn't discussed in the briefs, and I'm happy to submit a 28-J on it, but United States v. Doe, which is 865 F. 3rd 1295. And Doe provides for a review of the government's exercise at discretion. Doe says, yes, sole discretion means sole discretion, but if the defendant raises these allegations in the district court and they're sufficiently well pled, then the burden shifts to the government to justify their reasons there. So there is a remedy to the extent that we are concerned about that. Sorry, flipping back to plain error, I think there's also a real concern here that the district court just simply couldn't have seen anything wrong. The defendant didn't raise an objection. His counsel agreed to the sentence, and I couldn't find any case law in the circuit really even talking about when something falls outside the bounds of cooperation, let alone something analogous that would have alerted the judge that there might be a problem here. So as a result, I think the district court can be faulted for sort of failing to intervene without any kind of objection or argument from the defendant. If the court has no further questions, I'll see the remainder of my time. Thank you, counsel. Mr. Bailey. Thank you, Your Honor. Judge Carlson, to address the question you asked the government's counsel, could they deem for some other violation? I think we answer that by looking at what the plea agreement says they can do. And in the plea agreement on page four, here's the specific language. Provided that the defendant continues to fully and truthfully cooperate with the government as defined above, as determined in the government's sole discretion, the government agrees that it will file the motion. They list one factor that they will use in determining whether to file that motion, provided that the defendant continues to fully and truthfully cooperate as defined above. The hypothetical you propose of engaging in other frauds might be reason for the government to take some other action, maybe even trying to find that the plea agreement was breached, but it doesn't give them under the language they chose to put in there grounds to.